UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MATTHEW MOORE,

              Plaintiff,              Case No. 1:13-cv-1136

v.                                 Honorable Robert Holmes Bell

K.T. LOWE et al.,

              Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay an initial partial filing fee of $0.52 when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Matthew Moore presently is incarcerated at the Oaks Correctional Facility (ECF). He names as Defendants the following personnel from ECF and from the Bellamy Creek Correctional Facility (IBC), where he was previously housed: ECF Warden C. Curtin; ECF Librarian K.T. Lowe; ECF Assistant Resident Unit Manager (ARUS) Matthew Mitchell; ECF Resident Unit Manager (RUM) J. Thomas; ECF Administrative Assistant Eric Smith; IBC Warden Ken McKee; IBC ARUS Laura Nevins; and IBC Deputy Warden (Unknown) MaCauley. Plaintiff also identifies Warden Sharp, sometimes named as Deputy Warden Sharp, as a Defendant in the caption of his amended complaint, although Warden Sharp is not included in Plaintiff's list of Defendants. Nevertheless, because there are some allegations against Warden Sharp in the amended complaint, the Court will assume that Plaintiff intended to include Warden Sharp as a Defendant. Plaintiff does not identify where Defendant Sharp is employed.

Initially the Court notes that Plaintiff's amended complaint consists of sixteen handwritten pages of largely incomprehensible allegations. In addition, it is difficult, at best, to determine the nature of the constitutional violations about which he complains. Nevertheless, as required, the Court must read Plaintiff's complaint indulgently. *Haines*, 404 U.S. at 520. With that being noted, Plaintiff alleges that Defendants Lowe, Mitchell, Thomas and Smith are interfering with his ability to have copies made of documents he allegedly needs in connection with a lawsuit that he has or will file. Plaintiff alleges that Defendant Lowe has failed to make copies of exhibits he intends to file with an unspecified court, that she has kept documents that he wishes to have copied for 2-3 weeks without copying them and then returned them "most times saying she does not understand them or that she will only do what she wants to copy." (docket #13, Page ID#102.)

Plaintiff additionally alleges that Defendant Mitchell "harasses me each time she [sic] comes over, mostly about my case [and] why I am in prison." (*Id.*) When Plaintiff needed copies "of my Eastern complete" Defendants Mitchell and Lowe forced him to explain his case and "judged me on it." (*Id.*) Defendant Mitchell gets upset when Plaintiff sends out legal mail. Defendant Thomas is aware of "these matters" but told Plaintiff he would not do anything about it or help Plaintiff in any way. (*Id.*) Defendant Smith "was kited and told me that he also would not handle it and went on about a matter that had NOTHING to do with this at ALL." (*Id.*) Defendant Smith also told Plaintiff not "to speak on my Lord Christ to him." (*Id.*) Defendant Mitchell has tried "also to reinforce that, for me to stop with my religion." (*Id.*)

Plaintiff alleges that his eight year old son is being abused by his foster care provider. Plaintiff asked ECF to investigate calls made to a certain phone number from his inmate number "to substantiate my claims on [sic] this situation." (*Id.* at Page ID#103.) Plaintiff alleges that "[s]ince I've a hated residence [sic] at ECF prison they have refused to copy police investigation report for prosecutor office being raised in Eastern Federal courts." (*Id.*)

Plaintiff makes a variety of allegations about his ex-wife, whom he alleges has a severe mental illness, and his attempt to get a DNA test done for his child. These allegations and their relationship to this action are entirely unclear. Ultimately Plaintiff alleges that Defendant Lowe is refusing to make copies and is "not at all stirred with sympaty [sic]." (*Id.*) It is unclear what documents Defendant Lowe is refusing to copy.

Plaintiff alleges as "Issue 2" claims for "slander, perjury [and] false pretenses." (*Id.* at 105. In connection with these claims, Plaintiff alleges that he has suffered retaliation from Defendant Lowe. Plaintiff attaches to his complaint as Exhibit A a Step I Grievance Response. The

Grievance Response notes Plaintiff's complaint that he has not received copies back from Defendant Lowe, although the Grievance Response also notes that Plaintiff did not talk to Defendant Lowe about where to find his documents. The Grievance Response notes Defendant Lowe's comments regarding Plaintiff's document copying issues. Defendant Lowe states that Plaintiff "frequently sends . . . very large copy orders with disbursement that often do not match the documents provided." (docket #10, Page ID#73.) As a result, Defendant Lowe must use "a fair amount of time to sort out and understand his documents. (*Id.*) Defendant Lowe notes that the librarian at IBC experienced the same problem with Plaintiff. Plaintiff alleges that Defendant Lowe found out about his "problems" at IBC either by talking with the librarian at IBC, who apparently is a defendant in a case that Plaintiff has or may have filed, or "it must be in his file," which Plaintiff alleges is a violation of Michigan Department of Corrections (MDOC) policy. Plaintiff goes on to allege that Defendant Lowe made false statements "to intentionally defrad [sic] my person by perjury." (docket #13, Page ID#106.)

Plaintiff further alleges that ECF and IBC "prey upon my mental issue[s] using policy's they manipulate to harass and deprive me and defrad [sic] me." (*Id.*) Plaintiff alleges that Defendant Lowe has been negligent and has used "trickary [sic] by building up false documentations [sic] that ECF has reliance [sic] on making me her victim." (*Id.* at Page ID#107.) Plaintiff alleges that Defendant Lowe has tortured him "by way of mental abuse." (*Id.* at Page ID#108.) Plaintiff alleges that exhibits he intends to file in federal court are missing and neither ECF, Defendants Thomas or Lowe have done anything to find them. Plaintiff alleges that MDOC Policy requires that copies be returned within 3 business days, but Defendant Lowe has said that she does not get Plaintiff's legal papers for over a week from Defendant Thomas.

Plaintiff alleges that Defendants Curtin, Smith, Thomas, Mitchell and Sharp, along with several MDOC employees who are not defendants, "have also willingly led their hands to be unjust in order to punish the plaintiff for his IBC lawsuit which makes them . . . accessorys [sic] to an [sic] crime(s)." (*Id.* at Page ID#109.)

Plaintiff alleges the following as "Issue 3." ECF will not place him on the indigent list and when he wrote a grievance for being denied basic hygiene supplies, paper, pen and envelopes, "they responded by giving me a window washing job." (*Id.* at Page ID#110.) Plaintiff alleges that even with the window washing job, if he prepares and sends legal mail and buys hygiene supplies he still will not have enough money to buy paper, pens, and envelopes. Plaintiff alleges that "[t]hey have paper, pens, toothpaste, soap, etc. yet I am not allowed to have it because my name is not on a list even though I am 'poor'." (*Id.*) Plaintiff alleges that because he is being denied paper, pens and envelopes, he is being denied access to the courts.

Plaintiff alleges that when he was at IBC in July, 2013 he was on the indigent list and that he remained on the indigent list when he came to ECF. Although Plaintiff does not make it clear, apparently, at some point while at ECF he was taken off the indigent list. Plaintiff alleges that Defendant Lowe was the person who determined that he should not be on the indigent list. Plaintiff wrote a grievance complaining about the indigent list issue, but ECF "has not taken . . . any kind of corrective action that would fix performance problems." (*Id.* at Page ID#111.) Plaintiff alleges that Defendant Thomas explained to Plaintiff that he "do[es] have soap etc. coming [as] far as he [is] concerned." (*Id.*)

Plaintiff alleges that on January 13, 2014, and again on January 16, 2014, Defendant Lowe submitted copying charges for the same set of copies "to hurt" him and that "no one to date will undo it yet either." (*Id.*)

Plaintiff alleges that Defendants Lowe, Curtin, Mitchell, Thomas, MaCauley, McKee Sharp and Nevins, along with other MDOC employees who are not Defendants in this action, "exploited their authority status in an apparent attempt to put fear into" Plaintiff. Plaintiff alleges that this caused him to lose multiple lawsuits. (*Id.* at Page ID#112.) Plaintiff also alleges that these Defendants have "openly manipulated [the] prison transfer process." (*Id.*) Plaintiff alleges that "[t]he continuing pattern of ECF's criminal behavior" is intended to "help IBC retaliate upon" Plaintiff. (*Id.* at Page ID#113.)

Plaintiff alleges that Defendants Lowe, Nevins, McKee, Thomas and Curtin subjected Plaintiff to "several different kinds of treatments and conditions maliciously, unconstitutionally" thereby violating Plaintiff's right to equal protection "by way of willful misconduct, gross negligent [sic]." (*Id.* at Page ID#114). Plaintiff alleges that the Wardens, Sergeants and RUMs have "directly participated making their deposition clearly that of 'deliberate indifference' because "[t]hey all responded to Mr. Moore[']s claims/grievances and issues very unreasonably." (*Id.*) Plaintiff alleges that he was assaulted while at IBC and "[t]heir excessive means of force thus far administered upon Mr. Moore's [sic] substantiates such . . . and neither IBC or ECF . . . has offered any kind of real solution." (*Id.*)

Plaintiff makes allegations related to sending baby pictures, his wife's illness and his attempts to obtain a DNA test regarding a child assumed to be his child. Additionally, Plaintiff makes allegations about his other children, their suffering, his former wife's bitterness, his former

wife's betrayal, and his willingness to sacrifice his Greektown Casino winnings for the benefit of his family. It is entirely unclear how any of these allegation relate to any alleged unconstitutional conduct by the Defendants.

Plaintiff ends his complaint by alleging that Defendants are psychologically abusing him because they know his psychological history. Plaintiff alleges that this is cruel and unusual punishment. Thereafter, Plaintiff makes a number of allegations which are simply impossible to understand.

As relief, Plaintiff seeks nominal damages and punitive damages in the amount of $150,000 for deliberate indifference, mental and emotional abuse from Defendant Lowe and a temporary restraining order barring her from handling his legal work. Additionally, Plaintiff seeks $100,000 each from Defendants Mitchell, Thomas and Smith for deliberate indifference, gross negligence, improper supervision, and mental and emotional abuse. Plaintiff seeks another $50,000 from Defendant Smith for violating his First Amendment rights.

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Defendants Curtin, MaCauley, McKee, Thomas, Nevins and Sharp

Plaintiff makes only a few conclusory allegations against Defendants Curtin, MaCauley, McKee, Thomas, Nevins and Sharp. Plaintiff alleges that Defendants Curtin, Thomas and Sharp "have . . . willingly led their hands to be unjust in order to punish the plaintiff for his IBC lawsuit which makes them . . . accessorys [sic] to an [sic] crime(s)." (*Id.* at Page ID#109.) Plaintiff

alleges that Defendants Curtin, Thomas, MacAuley, McKee, Nevins and Sharp "exploited their authority status in an apparent attempt to put fear into" Plaintiff. " (*Id.* at Page ID#112.) Plaintiff also alleges that these Defendants "openly manipulated [the] prison transfer process." (*Id.*) Finally, Plaintiff alleges that Defendants Curtin, McKee, Thomas and Nevins subjected Plaintiff to "several different kinds of treatments and conditions maliciously, unconstitutionally" thereby violating Plaintiff's right to equal protection "by way of willful misconduct, gross negligent [sic]." (*Id.* at Page ID#114).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Moreover, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject

to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff allegations against Defendants Curtin, MaCauley, McKee, Thomas, Nevins and Sharp are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Plaintiff seems to suggest that these Defendants are retaliating against him, it is not clear what would motivate such conduct or what "adverse action" they are taking. Likewise, Plaintiff seems to suggest that these Defendants are violating his right to equal protection, but simply using the word "equal protection" without more, does not state a claim. It is impossible to ascertain what conduct these Defendants personally engaged in that violated Plaintiff's constitutional rights. Plaintiff's allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain

statement of the claim showing that the pleader is entitled to relief"). Consequently, his complaint

must be dismissed against Defendants Curtin, Thomas, MaCauley, McKee, Nevins and Sharp.

To the extent that Plaintiff intends to allege that Defendants Curtin, MaCauley,

McKee, Thomas, Nevins and Sharp are responsible for the conduct of their subordinates, he fails to

state a claim. Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676;

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d

484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active

unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*,

310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310

F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act based

upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In the absence of any

allegations suggesting that Defendants Curtin, MaCauley, McKee and Sharp engaged in any active

unconstitutional conduct, Plaintiff fails to state a claim against them.

### B.     Defendants Lowe, Mitchell and Smith

Plaintiff's allegations against Defendants Lowe, Mitchell and Smith are also largely

conclusory and fail to identify what conduct Plaintiff believes these Defendants engaged in that

violated his constitutional rights. Additionally, Plaintiff largely fails to suggest how any of

Defendants conduct harmed him.  To the extent the Court can conclude that Plaintiff raises any claims at all against Defendants Lowe, Mitchell and Smith, they are discussed below.

1.    Defendant Lowe

Plaintiff alleges that Defendant Lowe is interfering with his access to the Court by refusing to make copies of every document that he presents to her for copying, failing to copy documents within the time required by MDOC policy and, on one occasion, double billing him for copies.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal

materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Further, the Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim.

*Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[1] the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

The Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See, e.g., Bell-Bey v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. March 28, 1994) ("the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, *1 (6th Cir. March 31, 1993) ("the right to have access to the courts is not interpreted as requiring unlimited access to photocopiers"); *Al- Jabbar v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 ("a prisoner's right of access to the courts does not guarantee him

---

[1]Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence"of a forward-looking claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

unlimited photocopying at the state's expense") (6th Cir. May 19, 1992); *Bond v. Dunn*, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. Dec. 12, 1989) ("The constitutional right of access to the courts does not require that prison officials provide inmates free access to photocopying machinery."); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, *2 (6th Cir. May 23, 1989) ("The right of access to the courts does not require that prison officials provide free, unlimited access to photocopy machines.").

Plaintiff fails to allege facts sufficient to allow the Court to ascertain the nature of the legal action or actions Plaintiff is pursuing or intends to pursue. Plaintiff therefore has failed to demonstrate that he was pursuing a non-frivolous legal claim. Additionally, Plaintiff fails to allege how Defendant Lowe's alleged refusal to copy specific documents, or her failure to make the copies as quickly as Plaintiff would like, has interfered with such a non-frivolous legal claim.[2] In the absence of actual injury, plaintiff fails to state a claim of constitutional significance.

With respect to Plaintiff's allegations that Defendant Lowe has failed to follow MDOC policy by not copying his documents within the required time limit and by billing him twice for the same set of copies, he fails to state a constitutional claim. Defendant Lowe's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy

---

[2]Plaintiff alleges that he is being denied pens and paper. Plaintiff also alleges that his job at the prison fails to pay him enough to buy hygiene supplies and legal supplies, thus he is being denied access to the court. Even if these allegations were sufficient to state a claim, Plaintiff fails to state a claim because he has not identified any allegedly responsible parties. *See Frazier*, 41 F. App'x at 764 (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff alleges a due process claim because Defendant Lowe billed him twice for the same set of copies, such a claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive

04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim will be dismissed.

To the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

2.    Defendant Mitchell

Plaintiff alleges that Defendant Mitchell harasses him, forces him to explain his case, and gets upset when Plaintiff sends out legal mail. Plaintiff also alleges that Defendant Mitchell has tried to stop Plaintiff from talking with him about Plaintiff's religion.

To the extent Plaintiff's allegations regarding Defendant Mitchell's conduct suggests any constitutional claim at all, it suggests First Amendment or Eighth Amendment claims.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a

prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Mitchell arising from his alleged verbal abuse.

To the extent Plaintiff claims that Defendant Mitchell is interfering with the practice of Plaintiff's religion, which is protected by the First Amendment he fails to state a claim. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff does not explain how Defendant Mitchell's request that Plaintiff not speak to him about Plaintiff's faith infringes on the practice of Plaintiff's faith. Moreover, even if Plaintiff's faith required him to talk with others about it, Defendant Mitchell's request that Plaintiff not speak to him about Plaintiff's faith would still not be infringing. Nowhere does Plaintiff suggest

that Defendant Mitchell directed Plaintiff not to speak to others about his faith. By itself, Defendant Mitchell's request that Plaintiff not speak to him about Plaintiff's faith does not state a First Amendment claim.

3. <u>Defendant Smith</u>

Plaintiff alleges that Defendant Smith is interfering with Plaintiff's ability to have copies made, has requested that Plaintiff not speak to him about his faith and has "also willingly led [his] hands to be unjust in order to punish the plaintiff for his IBC lawsuit" (docket #13, Page ID#109). As explained above, Plaintiff fails to state a claim under the First Amendment for interference with court access, interference with religion or retaliation. Consequently, Plaintiff fails to state any claims against Defendant Smith.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: March 7, 2014                    /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE